## COMMONWEALTH *vs.* EDWARD F. MOORE.

Worcester.    October 6, 1892. — October 21, 1892.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Intoxicating Liquors — Illegal Keeping for Sale — Evidence — Exceptions —*
*Misdemeanor.*

At the trial of a complaint for unlawfully keeping for sale intoxicating liquors,
with intent unlawfully to sell the same, a police officer testified, against the
defendant's objection, that on the day named in the complaint he saw the
defendant and one H. drive with a horse and buggy, which had a covering at
the back end, up to a certain house; that the defendant, who was driving,
remained in the wagon, and H. got out, went into the house and came back,
and the defendant lifted up the cover at the back of the wagon, and H. took out
of the wagon a bag which appeared to contain a jug, and carried it into the
house; that the witness went into the house, and found a bag like that taken
from the wagon; that he opened the bag, and it contained a two-gallon jug of
whiskey; that a woman stood, as he entered the house, with a pocket-book in
one hand and some money in the other, in the act of handing it to H.; and that,
on another occasion previously, the witness saw the defendant drive along with
H. in a team, H. get out, and take a sack with something heavy like a jug in it,
and carry it into a house.  The judge instructed the jury that the evidence of
what H. did on the day named in the complaint could not be considered by them,
unless they were satisfied beyond a reasonable doubt, on all the evidence, that
he was acting by the defendant's direction, or was acting in pursuance of a com-
mon purpose with the defendant to keep intoxicating liquors unlawfully for
sale; and that, as to the evidence of what occurred at other times, such evidence
could be considered by the jury only in passing on the question whether the
defendant kept intoxicating liquors with the intent charged on the day named
in the complaint.  *Held,* that the defendant had no ground of exception.
At the trial of a complaint for unlawfully keeping for sale intoxicating liquors, with
intent unlawfully to sell the same, a police officer testified that the defendant
kept his team at a certain livery stable; that he had seen him drive into the
barn five and six times a day; and, against the defendant's objection, that he
looked through the cracks of the barn and saw the defendant and another man
standing inside; that he heard the breaking of crockery, and saw a man throw
a jug out of the window; that he went in and found a butter firkin containing
whiskey; that he also found the jug which was thrown out of the window, full
of whiskey, and many broken jugs; that the stones and side of the barn under
the window were wet with whiskey, and there were also a measure and tunnel
smelling of whiskey; that on another occasion he was in an old building within
five feet of the stable, and saw the defendant's team driven in there by another
man, and a keg was taken out; that they put some jugs into sacks, and the
defendant drove off with them; and that on still another occasion he saw the
defendant's team driven into the yard near the stable, from which the defendant
came out, took out a three-gallon jug, and put it in another wagon, and drove
off.  *Held,* that the defendant had no ground of exception.

At the trial of a complaint for unlawfully keeping for sale intoxicating liquors, with intent unlawfully to sell the same, if the evidence for the government tends to show that the defendant kept liquors in a certain stable, he has no ground of exception to the exclusion of evidence that the owner of the stable had been defaulted on a complaint charging him with the illegal keeping of liquors in the stable on the same day on which the witnesses for the government testified that the defendant's acts took place there.

At the trial of a complaint for unlawfully keeping for sale intoxicating liquors, with intent unlawfully to sell the same, there was evidence that the defendant, accompanied by one H., on the day named in the complaint, drove up to a house, in a wagon covered at the back end; that H. got out, the defendant lifted up the cover, and H. took from the wagon a bag containing what appeared to be a jug, and carried it into the house; that a police officer entered the house, opened the bag, and found that it contained a two-gallon jug full of whiskey; that a woman, as the officer entered, stood with a pocket-book in one hand and some money in the other, in the act of handing it to H., and the defendant, when he saw the officer, drove rapidly away; that on another occasion the defendant and H. drove up to a house, and H. got out and carried a sack with something heavy in it like a jug into the house; that the officer on another occasion looked through the cracks of a barn where the defendant kept his team, heard the breaking of crockery, and saw another man, in the defendant's presence, throw a jug out of the window; that the officer found in the barn a butter firkin containing whiskey; that he also found the jug which was thrown out the window, full of whiskey, and many broken jugs; that the stones and side of the barn under the window were wet with whiskey, and there were also a measure and tunnel smelling of whiskey; that, on two other occasions, the defendant was seen, in the vicinity of the barn, to take a jug out of his wagon, and to put other jugs into it, and drive away with them; that the defendant had also been seen frequently to go to a freight car, which was known to contain liquors, and take therefrom articles, put them into a bag, and drive off; and that he was not an expressman or truckman. The judge refused to rule, as requested by the defendant, that there was no evidence which would warrant a verdict of guilty. *Held,* that the defendant had no ground of exception.

No exception lies to the refusal to give an instruction in the language requested, if it is given in substance and in another form.

All engaged in a common purpose of violating the law against the illegal keeping for sale of intoxicating liquors are principals.

COMPLAINT, to the Central District Court of Worcester, for unlawfully keeping for sale intoxicating liquors, with intent unlawfully to sell the same, on July 9, 1892, at Worcester. Trial in the Superior Court, on appeal, before *Fessenden,* J., who allowed a bill of exceptions, in substance as follows.

One Thayer testified for the government that he was a police officer of the city of Worcester and knew the defendant; that on the morning of July 9, 1892, he and another officer were standing in the doorway of a store at the corner of Bridge and Mechanic Streets in Worcester, and saw the defendant and one

Hart drive up Bridge Street with a horse and buggy; that in the back end of the buggy there was a leather covering; that the defendant was driving; and that Hart got out of the buggy. The defendant objected to the admission of any evidence of what Hart did, but the judge overruled the objection; and the defendant excepted.

The witness then testified as follows: " The defendant remained sitting in the wagon, Hart went into a house and came back and took something in a paper bag into the house, the defendant lifting up the cover or curtain, Hart then taking the bag and its contents, which was like a jug, out of the wagon from beneath the cover. We followed into the house, and found an empty two-gallon jug on the floor on one side of a woman, a paper bag like the one taken from the wagon standing on the other side and close to her. We opened the bag, and it contained a two-gallon jug full of whiskey. The woman, as we entered, stood with a pocket-book in one hand and some money in the other, in the act of handing it to Hart; she drew it back on seeing us. The defendant lashed his horse and drove off when he saw us. On June 15, 1892, we were on Harding Street, near Temple Street, in Worcester, and saw the defendant drive along with Hart in a team; Hart got out and took a sack with something heavy like a jug in it, and carried it into a house." The defendant objected, as before, to the admission of evidence of Hart's act, but the judge overruled the objection; and the defendant excepted.

The witness further testified as follows: " On May 25, 1892, the defendant kept his team at McDonnell's livery stable on Franklin Street. Since May 1st he has had different boys or young persons driving around in his wagon with him. He came out and looked up the street, then went into the barn. I have seen him drive into the yard and barn five and six times a day. I have searched the barn." The defendant objected to the introduction of evidence of what was found in the livery stable, but the judge admitted it; and the defendant excepted.

The defendant then stated that he would afterwards introduce a record of a default made by McDonnell on a complaint charging him with the illegal keeping of liquors on May 25, 1892, at this same stable. The judge declined to allow the evidence to be introduced; and the defendant excepted.

The witness continued as follows: " I looked through the cracks of the barn, and saw the defendant and one Butler standing inside. I heard the breaking of crockery, and saw a young man throw a jug out the window; the defendant was in his shirt sleeves. I went in and found a butter firkin containing a pint and a quart of whiskey. The defendant motioned to Butler. I found the jug that was thrown out of the window full of whiskey, also many broken jugs, the stones and side of the barn under the window were wet with whiskey, and there were also a measure and tunnel smelling of whiskey. On May 23, 1892, I was in an old building within five feet of the stable, in an empty tenement, and saw the defendant's team driven in there by Butler. A keg was taken out. They put some jugs in the sacks, and the defendant drove off with them. On May 14, 1892, I saw the defendant's team driven into the yard near McDonnell's stable. The defendant came out of the barn, took out a three-gallon jug, and put it in another team, and drove off. A freight train comes into the Boston and Albany Railroad Company's freight-house in Worcester about 4 P. M. each day, one car of which is filled with liquor addressed to Worcester parties, and to many who cannot be found under the names appearing on the packages. I have seen the defendant go at that time into the car, take things out of it, put them in a bag, and drive off. I have seen his team many times in that locality near the freight car. He is not an expressman nor truckman."

Alfred Harper, a police officer of Worcester, who was with the witness Thayer on the morning of July 9, 1892, at the corner of Bridge and Mechanic Streets, testified to substantially the same facts as he did, and under the same objection and exception.

Edward F. Crowell, another police officer of Worcester, testified, against the defendant's objection, as follows : " I was with the first witness (Thayer) when the raid was made on McDonnell's stable, May 25, 1892. . . . I crawled around the barn, and heard noises within. I saw the defendant and three other men in the barn, on the second floor, one sitting on a bale of hay. The defendant asked me if I was looking for McDonnell. Back of the barn I found a lot of broken jugs, a keg, and a butter firkin. Jugs or pieces of them were saturated with whiskey. I found a tunnel stuck up in one of the beams; in a manger was

an ice-pick, and a copper measure. A horse was driven into the yard. The defendant said to me, ' I should like to give you a chase some day with that horse, when I've got a jug in.' " The defendant also excepted to the admission of this evidence.

Charles A. Garland was allowed to testify to substantially the same facts in regard to McDonnell's stable as the preceding witnesses; and the defendant excepted.

This was all the evidence for the government. No evidence was offered for the defendant.

The defendant asked the judge to rule as follows: " 1. There is no evidence introduced in this case that will warrant the jury in finding the defendant guilty of the offence charged in the complaint. 2. If the jury are satisfied that all the defendant did was, either by himself or by Hart, to deliver intoxicating liquor to a private dwelling-house, and to persons resident therein, they are not justified in finding that such delivery was *prima facie* evidence of a sale. 3. In the case of the statutory offence of illegal liquor keeping, the maxim, ' All are principals,' the offence being a misdemeanor, does not apply. In other words, the offence of keeping intoxicating liquor is an exception to the general rule, ' In misdemeanor all are principals.' 4. The evidence in this case, if it proves anything, proves that the defendant was guilty of the offence of ' illegal transportation,' or of being accessory to the crime of 'illegal liquor keeping.' The defendant cannot be convicted of the charge laid in this complaint, because the offence of which he is guilty is not properly set out in the complaint." The judge refused to give the rulings requested; and the defendant excepted.

The judge instructed the jury that the defendant alone was on trial, and that he was charged, not with illegally transporting liquors, but with unlawfully keeping liquors, with intent to sell the same unlawfully; that the jury must be satisfied beyond a reasonable doubt that the defendant at Worcester unlawfully, on the day named in the complaint, kept intoxicating liquors with intent to sell the same in violation of law; that, although the charge was not selling liquors, yet the jury might consider evidence, if there was any, of a sale or a delivery of intoxicating liquors, accompanied by such acts as would satisfy them

that the transaction was a sale by the defendant; that in passing upon the question of the intent with which the defendant kept the intoxicating liquors, if it was shown that he kept intoxicating liquors, the delivery of such liquors was ordinarily *prima facie* evidence that such delivery was a sale, but that it was not such evidence when made in a private dwelling-house, if nothing else appeared to show that it was a sale; that the evidence of what Hart did on the day named in the complaint could not be considered by the jury, unless they were satisfied beyond a reasonable doubt, on all the evidence, that he was acting by the direction of the defendant, or was acting in pursuance of a common purpose with the defendant to keep intoxicating liquors unlawfully for sale; that it would be sufficient for the purposes of this case if the jury were satisfied beyond a reasonable doubt that the defendant either so kept intoxicating liquors himself, or knowingly participated in keeping intoxicating liquors unlawfully; and that, as to the evidence of what occurred at other times, such evidence could be considered by the jury only in passing upon the question whether the defendant kept intoxicating liquors with the intent charged, on the day named in the complaint.

The jury returned a verdict of guilty; and the defendant alleged exceptions.

*J. E. Sullivan & D. F. O'Connell*, for the defendant.

*F. A. Gaskill*, District Attorney, for the Commonwealth.

MORTON, J. The defendant was charged with unlawfully keeping intoxicating liquor for sale, with intent to sell the same unlawfully.

The testimony as to the acts of Hart was rightly admitted. Whether it tended to show a common purpose between him and the defendant, or that he was acting under the defendant's direction, or neither, was for the jury. The rights of the defendant were carefully guarded by the instructions of the court. *Commonwealth* v. *McDonald*, 147 Mass. 527.

The testimony as to what occurred in and around McDonnell's stable was also rightly admitted. If believed, it had a tendency to show that the defendant was keeping liquors there, and it was for the jury to say, on this and all the evidence, whether he was keeping liquors with intent to sell the same

unlawfully. *Commonwealth* v. *Shaw*, 116 Mass. 8. *Commonwealth* v. *Ham*, 150 Mass. 122.

The fact that McDonnell had been defaulted on a complaint charging him with the illegal keeping of liquors in the stable on the same day on which the government witnesses testified to seeing the defendant there had no tendency to show that the defendant did not keep liquor there also.

The rulings asked for by the defendant were all rightly refused.

1. There was evidence for the jury whether the defendant was or was not guilty of the offence charged.

2. This was given in substance and in another form by the court. The defendant has not argued that it was not.

3. As drawn this was clearly erroneous. It has been held in cases analogous to this that parties violating the liquor law, so called, come within the general rule that all engaged in a misdemeanor are principals. *Commonwealth* v. *Brown*, 154 Mass. 55.

4. There was evidence that warranted the jury, as already stated, in finding the defendant guilty of the offence charged.

The instructions to the jury were all that the case called for, were careful and precise, and the defendant's rights were fully protected.                                      *Exceptions overruled.*