ROBERT E. POWERS vs. COMMONWEALTH.

Suffolk. September 13, 1982. — November 4, 1982.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

Constitutional Law, Privilege against self-incrimination. Practice, Crim-
inal, Grand jury proceeding. Supreme Judicial Court, Superintend-
ence of inferior courts.

A prospective witness before a grand jury considering an indictment for
murder was entitled to invoke his privilege against self-incrimination,
and thus was relieved from an order compelling his testimony, where
his earlier voluntary statement to police, which revealed knowledge of
the details of the crime, together with a telephone call by him in which
he pretended to be another person and "confessed" to the murder,
might be used to prove that he had observed or participated in the
murder. [564-566]

CIVIL ACTION commenced in the Supreme Judicial Court
for the county of Suffolk on June 30, 1982.

The case was heard by O'Connor, J.

Linda M. Poulos, Assistant District Attorney, for the
Commonwealth.

John H. Cunha, Jr., for the plaintiff.

HENNESSEY, C.J. The plaintiff Robert E. Powers sought
relief in this court, pursuant to G. L. c. 211, § 3, from an
order of the Superior Court compelling him to testify before
a grand jury. A single justice of this court granted relief,
and the Commonwealth appealed. We affirm the decision
of the single justice, on the ground that the Superior Court
order violated the plaintiff's rights under the Fifth and
Fourteenth Amendments to the United States Constitution.

The facts, as stipulated by the parties, are as follows.
While being held on other charges, Robert E. Powers volun-
tarily made statements to the Boston police department im-
plicating one Mark Morrison in the murder of Professor

Leonard J. Randeau. According to Powers, he was with Morrison on the evening of the murder, but left him at Faneuil Hall Market in Boston. The next day Morrison told Powers that he had murdered Randeau. Powers said Morrison told him he had stabbed the victim four times in the neck and four times in the back with a "machete-type" knife, and tried to strangle the victim with a telephone cord; taken $30 and two pounds in English currency from the victim; left his belt in the apartment (a belt used in the United States Armed Forces); and met a woman in the building. Powers also told the police that Morrison had confessed to him a second time, but Powers later recanted this statement.

Powers was given a polygraph examination in which he denied being present at or participating in the murder. The polygraph did not support his responses. Shortly thereafter a person, later identified as Powers, telephoned the Boston police department and stated that he was "Mark M" and he wanted to confess to the murder of "Lennie."

Morrison was indicted for Randeau's murder, but when the case came to trial it was dismissed without prejudice, pending the apprehension of Powers, who had left the Commonwealth. When he was returned, he was called to testify before a grand jury seeking to reindict Morrison. On the advice of counsel, Powers refused to answer the following questions: "[W]ere you with Mark Morrison the night of June 5, 1980? [D]id you give to members of the Boston Police Department a statement you attributed to Mark Morrison relating to the death of Professor R[a]ndeau?"[1]

*Malloy* v. *Hogan,* 378 U.S. 1 (1964), requires us to apply Federal standards to determine whether a witness's claim of privilege is justified. *Taylor* v. *Commonwealth,* 369 Mass. 183, 187 (1975). *Commonwealth* v. *Baker,* 348 Mass. 60, 62-63 (1964). Under these standards, a witness who asserts

---

[1] Powers testified that his name was Robert Powers; he was twenty-three years old; he was from Charlestown but he was being detained at the Billerica house of correction; and he had known Mark Morrison for twelve years.

his privilege cannot be compelled to testify unless it is "*perfectly clear* from a careful consideration of all the circumstances in the case, that the witness is mistaken, and that the answer[s] *cannot possibly* have such tendency' to incriminate." *Malloy* v. *Hogan, supra* at 12, quoting *Hoffman* v. *United States,* 341 U.S. 479, 488 (1951). *Taylor* v. *Commonwealth, supra* at 187. *Gambale* v. *Commonwealth,* 355 Mass. 394, 396-397, cert. denied, 396 U.S. 881 (1969). *Murphy* v. *Commonwealth,* 354 Mass. 81, 83 (1968). The privilege protects not only "answers that would in themselves support a conviction . . . but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute." *Malloy* v. *Hogan, supra* at 11, quoting *Hoffman* v. *United States, supra* at 486. *Taylor* v. *Commonwealth, supra.*

In the circumstances of the present case, we cannot say it is clear that Powers' testimony cannot possibly incriminate him. The Commonwealth argues that Powers' testimony would do no more than make him a witness to the incriminating statements made by Morrison. It relies in part on our decision in *Gambale* v. *Commonwealth, supra* at 397-398, that a witness could not refuse to answer questions which did not seek to implicate him as a participant, but merely sought to ascertain what he observed. The Federal test and our prior cases, however, require us to evaluate the claim of privilege in the setting of each case. Here, Powers' statement to the police described the precise manner in which the murder was committed, weapons used, items taken from the victim, an item left in the victim's apartment, and a possible witness whom Morrison encountered as he left the scene. Knowledge of these details, taken together with the telephone call to the police when Powers pretended to be Morrison and "confessed" to Randeau's murder, might well be used to prove that Powers observed or participated in the murder. We do not rely on the polygraph examination to support our conclusion. We decide only that in the circumstances of this case, the details in Powers' statement coupled with the telephone call support

his claim of privilege under our established test. If the Commonwealth believes that Powers' testimony is vital, it can seek immunity for him under G. L. c. 233, § 20F. The judgment of the single justice granting relief is affirmed.

*So ordered.*